IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| THOMAS B. WHITFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:07cv123-CSC |
| | ) | (WO) |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I. Introduction**

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 et seq., and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq., alleging that he was unable to work because of a disability. His application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1631(c)(3). The parties have consented to the United States

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment, pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1.  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1)  Is the person presently unemployed?
> (2)  Is the person's impairment severe?
> (3)  Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the person unable to perform his or her former occupation?
> (5)  Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction**. The plaintiff was 46 years old at the time of the hearing before the ALJ. (R. 277). Whitfield has an eleventh grade education. (R. 59). The plaintiff's prior work experience includes work as a cabinet maker, construction laborer, cut-off aluminum

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

3

saw operator, grider/machine shop worker, and general office clerk. (R. 24). Following the hearing, the ALJ concluded that the plaintiff has severe impairments of "status post left radical nephrectomy, diabetes mellitus type II, osteoarthritis, obesity, and history of alcohol abuse."[4] (R. 22). The ALJ concluded that the plaintiff was able to return to his past relevant work as a general office clerk. (R. 24). In the alternative, the ALJ concluded that there were a significant number of jobs in the national economy that the plaintiff could perform. (R. 24-25). Consequently, the ALJ concluded that the plaintiff was not disabled. (R. 25-26).

**B. Plaintiff's Claims**. As stated by the plaintiff, he presents the following two issues for the Court's review:

1. Whether the Commissioner erred by concluding that the claimant's part-time work activity at a church run homeless shelter constituted relevant work as defined by the Social Security Regulations, Social Security Rulings and the law. (Pl's Br. at 1).

2. Whether the Commissioner erred by finding the claimant's allegations of pain were not credible. (Pl's Br. at 2).

## IV. Discussion

A disability claimant bears the initial burden of demonstrating an inability to return to his past work. *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990). In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3)

---

[4] The ALJ also concluded that the plaintiff's hypertension was not a severe impairment. (R. 22).

subjective evidence of pain and disability, e.g., the testimony of the claimant and his family or friends, and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983). The court must scrutinize the record in its entirety to determine the reasonableness of the ALJ's decision. *See Walker,* 826 F.2d at 999. The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker,* 662 F.2d 735, 735-36 (11th Cir. 1981). The ALJ must also state, with sufficient specificity, the reasons for his decision referencing the plaintiff's impairments. "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits is rational and supported by substantial evidence." *Id*.

Whitfield contends that the ALJ improperly concluded that his part time work at the homeless shelter constituted relevant work, and then the ALJ compounded his error by relying on that conclusion to find that Whitfield could perform work as a general office clerk. (Pl's Br. at 4). The plaintiff is simply incorrect. The ALJ recognized that he did not have enough evidence before him to determine whether the plaintiff's part-time work constituted "substantial gainful activity" sufficient to preclude Whitfield from getting beyond step one of the sequential analysis.

> In order to reach a conclusion as to whether the claimant is engaging in substantial gainful activity at any time after the alleged onset date, further evidence must be obtained and additional evaluations made. Inasmuch as the medical record demonstrates that the claimant is capable of working and this claim can be denied at step number four of the sequential evaluation, I will deny the claim at that step and will not delay the issuance of a decision.

(R. 19).

The Social Security Administration has developed a sequential evaluation process for determining if a plaintiff is disabled. 20 C.F.R. §§ 404.1520 and 416.920. At step one of the analysis, if the claimant is "doing substantial gainful activity," he is not disabled. *Id.* At step four, the claimant's residual functional capacity is evaluated. If the claimant "can still do [his] past relevant work, [the Commissioner] will find that [he] is not disabled." (*Id.*) The ALJ does not state in his opinion that he concluded that the plaintiff's part time work constituted substantial gainful activity. Consequently, the ALJ was not required to inquire further into the nature of that employment.

Nonetheless, the ALJ could consider the plaintiff's daily activities, including any work activity, to determine the plaintiff's residual functional capacity to perform work. The ALJ relied on the plaintiff's own testimony regarding his work abilities[5] as well as the testimony of the vocational expert to conclude that Whitfield could perform work as a general office clerk.[6] (R. 24). A review of the ALJ's decision demonstrates that the ALJ conducted a thorough analysis of the testimony and considered all of the evidence in reaching his decision. A claimant bears the burden of proving that he can no longer perform his past

---

[5] The ALJ found that "[t]he claimant has admitted certain abilities, which provide support for the residual functional capacity conclusion." (R. 24) Whitfield testified at the administrative hearing that he performed "light administrative duties . . . light office work," which included typing, answering the phone and using the computer. (R. 257-58).

[6] "The vocational expert testified that the residual functional capacity would not preclude the performance of work that the claimant was presently doing, i.e., work as a General Office Clerk (semi-skilled, light)." (R. 24).

relevant work. If a claimant can do the kind of work he has done in the past, he is not disabled.

> The regulations require that a claimant not be able to perform [her] past *kind* of work, not that [s]he merely be unable to perform a specific job [s]he held in the past. 20 C.F.R. §§ 404.1520(e), 416.920(e) 1986). "A claimant makes a prima facie showing of disability only by establishing 'that he is unable to return to his former *type* of work.'" *Pelletier v. Secretary of HEW*, 525 F.2d 158, 160 (1st Cir. 1975) (emphasis in First Circuit opinion) (citations omitted). A claimant has to "show an inability to return to her previous work (i.e. occupation), and not simply to her specific prior job." *DeLoatche v. Heckler*, 715 F.2d 148, 151 (4th Cir. 1983. *See also Jock v. Harris*, 651 F.2d 133, 135 (2d Cir. 1981).

*Jackson v. Bowen*, 801 F.2d 1291, 1293 (11th Cir. 1986). The plaintiff failed to meet his burden in this regard and he is entitled to no relief on this basis.

Next, according to Whitfield, his pain is so severe he cannot work. As explained below, the ALJ did not fully credit this testimony. Whitfield argues that the ALJ failed to properly discredit his pain testimony. "Subjective pain testimony supported by objective medical evidence of a condition that can reasonably be expected to produce the symptoms of which the plaintiff complains is *itself* sufficient to sustain a finding of disability." *Hale v. Bowen*, 831 F.2d 1007 (11th Cir. 1987). The Eleventh Circuit has established a three-part test that applies when a claimant attempts to establish disability through his own testimony of pain or other subjective symptoms. *Landry,* 782 F.2d at 1553; *see also Holt*, 921 F.2d at 1223. This standard requires evidence of an underlying medical condition *and either* (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) an objectively determined medical condition of such severity that it can

reasonably be expected to give rise to the alleged pain.  *Landry,* 782 F. 2d at 1553.  In this circuit, the law is clear.  The Commissioner must consider a claimant's subjective testimony of pain if he finds evidence of an underlying medical condition and the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain.  *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry*, 782 F.2d at 1553.  Thus, if the Commissioner fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, the Commissioner has accepted the testimony as true as a matter of law.  This standard requires that the articulated reasons must be supported by substantial reasons.  If there is no such support then the testimony must be accepted as true.  *Hale*, 831 F.2d at 1012.

At the administrative hearing, the plaintiff testified that he suffers from joint pain.  (R. 260).  According to the plaintiff, his joints ache all the time.  (R. 233, 270, 271).  He further testified that he was prescribed Naprosyn,[7] (R. 233, 261), but he only takes it at night.  (R. 261).  He takes Tylenol and Ibuprofen for his pain.  (R. 261, 272).  He was prescribed Loratab for his kidney pain but he no longer has a prescription.  (R. 261).  He testified that he thought he could sit for two (2) and half (1/2)  hours to three (3) hours at a time and stand for two (2) to four (4) hours at a time.  (R. 272).  On his application for disability, Whitfield indicated that he stopped working because  he "was laid off [his] job because work was slow."  (R. 56).

---

[7] Naprosyn is a brand name for Naproxen, an anti-inflammatory drug used to manage "mild to moderate pain, fever and inflammation."  http://www.medicinenet.com/naproxen/article.htm

The ALJ discredited the plaintiff's testimony of disabling pain and functional restrictions as his "testimony of disabling pain and functional restrictions is disproportionate to the objective medical evidence." (R. 23). If this were the extent of the ALJ's credibility analysis, the plaintiff might be entitled to some relief, but the ALJ did not stop there.

> The record does not contain objective signs and findings that could reasonably be expected to produce the degree and intensity of pain and limitations alleged. There are no diagnostic studies to show abnormalities that could be expected to produce such severe symptoms. The physical findings in the record do not establish the existence of neurological deficits, significant weight loss, muscle atrophy, or other observable signs often indicative of protracted pain of the intensity, frequency, and severity alleged.
>
> There is evidence that the claimant stopped working for reasons not related to the alleged disabling impairments. In this regard, the claimant reported that he stopped working on January 15, 2003 because – "i (sic) was laid off work because work was slow."
>
> The claimant has described activities, which are not limited to the extent one would expect given the complaints of disabling symptoms and limitations:
>
> • The claimant completed a questionnaire on June 5, 2004, giving details and examples of his activities. "I live in a homeless mission. My daily activities consist of cooking breakfast at 5 A.M. Then I go to bible study at 8:A.M. Then I drive the van & take any of the other members where they have to go (to work, to the store, to the doctor, or any other place they may have to go to complete their day.) I spend approximately 2-3 hours daily driving & when I help out in the kitchen I spend maybe 4 to 6 hrs helping out." ... "On Mondays & Thursdays I go with the director & do the Grocery Shopping." ... "I can walk only short distances (maybe 2 miles)" ... (Exhibit 4E)
>
> • At the hearing, the claimant testified that he had worked part-time at a church run homeless shelter since August 2005. He answered the telephone and typed prayer letters. He drove the church van. He went grocery shopping and did some of the cooking. He was the Assistant Director and was "on call."

(R. 23-24).

The ALJ has discretion to discredit a plaintiff's subjective complaints as long as he provides "explicit and adequate reasons for his decision." *Holt,* 921 F.2d at 1223. The ALJ's reasons for discrediting the plaintiff's testimony of pain and disability were both clearly articulated and supported by substantial evidence. *Id.* Relying on the treatment records, objective evidence, and Whitfield's own testimony, the ALJ concluded that the plaintiff's allegations regarding the extent of his pain were not credible and discounted that testimony. After a careful review of the record, the court concludes that the ALJ's reasons for discrediting the plaintiff's testimony were both clearly articulated and supported by substantial evidence. It is undisputed that the plaintiff suffers from pain. The ALJ considered that the plaintiff's underlying condition is capable of giving rise to some pain and other limitations, but he concluded that the plaintiff's underlying impairments are not so severe as to give rise to the disabling intractable pain as alleged by the plaintiff.[8]

To the extent that he argues that the ALJ improperly relied on the testimony of Dr. Anderson, the medical expert, to discredit the plaintiff's testimony, Whitfield is entitled to no relief. He argues that Dr. Anderson failed to consider his treatment records from May 28, 2004 until October 21, 2004. (Pl's Br. at 5). The plaintiff's argument blatantly misrepresents Dr. Anderson's testimony by taking it out of context. During the period of May 28, 2004, until August 2004, Whitfield presented only once to the doctor. On May 28, 2004. Whitfield

---

[8] The ALJ found that Whitfield "experiences mild to moderate pain, which occasionally affects his ability to maintain concentration, persistence, and pace." (R. 24).

complained that his "diabetes was acting up." (R. 221). The treatment note indicates that Whitfield had not taken his medication in two years. (*Id.*) At the administrative hearing, Dr. Anderson testified regarding whether Whitfield met the listing for carcinoma of the kidney or any other listing. (R. 278).

> He has post-surgical treating records from the HSI clinic for his, apparently he is taking some medical treatment for his diabetes and hypertension at this time. There's no treating records for any pain syndrome and/or arthritis. The only mention of arthritis is in his SSI examination by Dr. Colley [phonetic] in July of '04 where he complained of generalized pain of Aarthritis (sic). Dr. Colley's diagnosis was medical non-compliance, alcohol abuse with enlarged liver, and untreated diabetes mellitus. This gentleman, I evaluated him under the carcinoma of the kidney listing 13.21. In order to meet that listing, you would have to have a tumor that was recurrent. Obviously, this is not true, and/or one was spread. That is also not true. He would not meet or equal that listing. He would not meet any listing, in my opinion. And his present poor compliance situation, he would be limited to light work activities. If he were to become more compliant with his control of his blood sugar, that would most likely improve. During the period from 1, January 2003 to August 2004, received no medicine or no medical treatment, so it certainly would not meet or equal a listing during that period of time either.

(*Id.*)

Whitfield complains at length about Dr. Anderson's failure to consider his "treatment for pain and obstruction caused by the kidney cancer." (Pl's Br. at 5-6). Although Whitfield was diagnosed with a renal mass in 2002, the record clearly demonstrates that Whitfield declined surgery in 2002.[9] (R. 123 & 136). On August 13, 2004, Whitfield presented to the hospital complaining of left flank pain. (R. 134). He was diagnosed as suffering from

---

[9] At the administrative hearing, Whitfield testified about why he did not have the surgery in 2002. "There was a uh a lot of things going on at the time. My dad got sick and . He ended up, he died, and he was in the hospital, and it was just me and my, I guess, girl at the time we were having problems. It's just things were in, I didn't do it, basically what happened." (R. 266).

"hematuria of 4 days duration." (R. 131). The hematuria resolved with treatment and Whitfield was scheduled for surgery to remove the afflicted kidney. (*Id.*) On September 29, 2004, Whitfield underwent a successful left radical nephrectomy. (R. 172).

Taken alone, the opinion of a non-examining reviewing physician does not constitute substantial evidence to support an administrative decision. *Swindle v. Sullivan*, 914 F.2d 222, 226 n. 3 (11th Cir. 1990). However, an ALJ does not err in relying on the opinion of the non-examining physician when that opinion does not contradict an examining physician's opinion. *Edwards v. Sullivan*, 937 F.2d 580, 584-585 (11th Cir. 1991). The evidence in the record supports the ALJ's reasons for relying on Dr. Anderson and declining to credit the plaintiff's pain testimony.

Finally, the court notes that the ALJ went beyond step 4 of the sequential analysis to step 5 and determined by expert vocational testimony that there were other jobs that Whitfield could perform in the regional and national economy. (R. 24). This court must accept the factual findings of the Commissioner if they are supported by substantial evidence and based upon the proper legal standards. *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

## V. Conclusion

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that plaintiff is not disabled. Thus, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed.

A separate order will be entered.

Done this 26th day of September, 2007.

      /s/Charles S. Coody
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE